UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sarah Lampron and
Walter Lampron

   v.                                       Civil No. 20-cv-317-JD
                                              Opinion No. 2020 DNH 106

Johnson & Johnson and
Ethicon, Inc.

O R D E R

Sarah and Walter Lampron bring product liability and related claims against Johnson & Johnson and Ethicon, Inc., alleging that Sarah was injured by a surgically implanted mesh product made by the defendants. The defendants move for summary judgment on a variety of grounds. The Lamprons concede some of their claims but oppose summary judgment as to their claims for negligent design in Count I, strict liability due to design defect in Count V, loss of consortium in Count XVI, punitive damages in Count XVII, and the discovery rule and tolling in Count XVIII.

Standard of Review

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Faiella v. Fed. Nat'l Mortg. Assoc., 928

F.3d 141, 145 (1st Cir. 2019).  A material fact is one that could change the outcome.  Doe v. Trs. of Bos. Coll., 892 F.3d 14, 23-24 (1st Cir. 2017).  "Facts are material when they have the potential to affect the outcome of the suit under the applicable law," and a dispute is genuine when "a reasonable jury could resolve the point in the favor of the non-moving party."  Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 87 (1st Cir. 2017).  The court views the evidence in the light most favorable to the non-moving party and resolves reasonable inferences in his or her favor.  Town of Westport v. Monsanto Co., 877 F.3d 58, 64-65 (1st Cir. 2017).

## Background[1]

Sarah Lampron had surgery at Concord Hospital on May 4, 2009, to repair pelvic organ prolapse.  Her surgeon used the defendants' product, Prolene Soft mesh to construct a sling.  The surgery was without complications.

---

[1] The defendants argue that the Lamprons did not respond properly to their statement of material facts because they did not address each fact individually with numbered paragraphs.  The defendants misunderstand the requirements of LR 56.1(b), which makes no mention of numbered paragraphs, and instead requires "a short and concise statement of material facts, supported by appropriate record citations, as to which the adverse party contends a genuine dispute exists so as to require a trial."  Therefore, that is not a basis to deem the defendants' facts to be admitted.

In August of 2009, Sarah was treated for a small area of exposed suture. In December of 2010, Sarah was seen for complaints of urinary frequency and urinary tract infections. Sarah was diagnosed with a return of pelvic prolapse and a pelvic mass. On January 5, 2011, her surgeon removed an area of extruded Prolene mesh and used a different mesh for the repair. Sarah had ongoing lower back pain after that procedure. On June 17, 2013, Sarah had another surgery to remove extruded Prolene mesh.

The Lamprons brought suit on March 3, 2015. They alleged product liability claims arising from the problems and injuries that Sarah experienced due to the defendants' mesh product. Their case was part of a multidistrict litigation in the Southern District of West Virginia. It was transferred to this court on March 6, 2020.

## Discussion

The defendants move for summary judgment on the grounds that the Lamprons' claims are barred by the statute of limitations, that they lack evidence of causation for their design defect and negligent infliction of emotional distress claims, that the loss of consortium claim is not viable without the underlying claims, and that the Lamprons do not state claims for punitive damages or the discovery rule. In their response,

3

the Lamprons state that they are conceding their failure to warn claims in Counts I and III, their constructive fraud claim in Count VIII, and their negligent infliction of emotional distress claim in Count X.  They oppose summary judgment based on the statute of limitations and argue that there is sufficient evidence to create a factual dispute as to the other claims, design defect in Counts I and III, and Counts XVI, XVII, and XVIII, to avoid summary judgment.  The defendants filed a reply.

A.   Statute of Limitations

New Hampshire provides a three-year statute of limitations in product liability actions.[2]  RSA 508:4, I.  The limitation period begins "when the act or omission complained of" occurs.  Id.  If the defendant shows that suit was not brought within three years of "the act or omission complained of," in response, the plaintiff must show that the discovery rule or another tolling doctrine applies to avoid dismissal of the claim.  Beane v. Dana S. Beane & Co., P.C., 160 N.H. 708, 712 (2010).

The discovery rule extends the limitation period "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced

---

[2] The parties agree that New Hampshire law governs in this case.

4

within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I.  In other words, the discovery rule will not extend the limitation period if a plaintiff knew or reasonably should have known that she was injured and knew or reasonably should have known that her injury was caused by the defendant.  Beane, 160 N.H. at 713.  "[A] plaintiff need not be certain of this causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule."  Id.  Whether the plaintiff exercised reasonable diligence in investigating the cause of her injury is a question of fact.  Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 638 (1993).

    The defendants contend that Sarah Lampron knew or should have known at least by January 5, 2011, when she had part of the mesh removed and another mesh product implanted, that she had been injured by the Prolene mesh used in the first surgery.[3] They also cite an additional in-office removal procedure on April 12, 2011.  Because the Lamprons did not file suit until

---

[3] The defendants also argue that Sarah was put on notice of her injury and its cause when her surgeon removed a suture on August 14, 2009.  The defendants do not show how the removal of a suture would put Sarah on notice that the mesh was defective and caused a problem that required removal of the suture.

March 4, 2015, more than three years after the subsequent procedures, the defendants argue that their claims are time barred.

In response, the Lamprons argue that Sarah was never informed by her doctors that the implanted mesh was defective or that the mesh caused the problems that required removal and repair. Instead, because she had been informed about certain risks of the pelvic prolapse repair procedure, she thought those risks were the cause of her problems. The Lamprons also argue that Sarah's surgeon did not know what was causing the problems that required repairs and that Sarah should not be held to have knowledge that her surgeon lacked.

The Lamprons contend that they did not become aware that Sarah's problems might have been caused by the mesh until the summer of 2014 when their daughter saw a commercial on television by a law firm about cases with claims arising from the defects of transvaginal mesh. They filed suit nine months later.

The defendants cite two cases from the same multidistrict litigation, which previously included this case, where the court granted summary judgment in favor of the defendants on the basis of the statute of limitations. In both of the cited cases, however, the plaintiff was informed that the defendants' mesh had eroded causing injuries, which put the plaintiffs on

6

sufficient notice to require the plaintiffs to investigate whether the defendants' products caused or contributed to cause their injuries.  See Stark v. Johnson & Johnson, 2020 WL 1914767, at *4 (N.D. Ill. Apr. 20, 2020); Norby v. Ethicon, Inc., 2020 WL 3400182, at *4 (N.D. Ga. Apr. 17, 2020).  In another case from the same multidistrict litigation, the court concluded that a jury question remained about the discovery rule even though a doctor told the plaintiff that the implanted mesh might be causing her symptoms.  Heinrich v. Ethicon, 2020 WL 1916767, at *4 (D. Nev. Apr. 17, 2020).

In this case, it is undisputed that Sarah Lampron was not told that the defendants' mesh product caused the problems she experienced.  It is also undisputed that she did not otherwise learn or understand that the mesh product was the cause of her problems until the summer of 2014.  The remaining question is whether she used reasonable diligence to discover the cause of her injury, and that question cannot be resolved on the current record.  Therefore, a factual issue remains as to whether the claims are barred by the statute of limitations.

B. Design Defect as Cause of Injury

The defendants contend that they are entitled to summary judgment on Sarah Lampron's design defect claims, Counts I and V, because she lacks evidence to show their mesh product had a

7

design defect that caused her injury.  In response, Lampron argues that a combination of the opinions provided by Dr. Michael Margolis and Dr. Donald Ostergard show that she suffered injuries as a result of the mesh implant.  The defendants reply that to the extent those opinions are allowed, they do not show that a design defect in the mesh caused Lampron's injuries.  Lampron did not file a surreply.

1.  Expert Opinions

The defendants moved to exclude certain opinions provided by the Lamprons' expert witnesses.  The Lamprons did not respond to the motion.  As a result, the motion was granted, and the challenged opinions were excluded.

Now, for purposes of opposing summary judgment, the Lamprons contend that the defendants challenged Dr. Margolis's opinion only to the extent he was offered as a general expert rather than a case specific expert.  They argue, therefore, that Dr. Margolis's opinions about Lampron's case are not excluded.  They also argue that Dr. Ostergard's general causation opinion was not excluded.[4]

---

[4] Although the Lamprons purport to cite to Dr. Ostergard's "Rule 26 Report," they did not provide that report in support of their memorandum opposing the motion for summary judgment.  The court found Dr. Ostergard's report as exhibit 3 to the defendants' motion to exclude his opinions.  See Doc. no. 65-4.

Because the Lamprons did not respond to the defendants' motions to exclude their experts' opinions, they did not make the points that they raise now about the limited scope of the defendants' motion. For the reasons provided below, however, even if the opinions are considered as the Lamprons urge, they nevertheless lack evidence to support the design defect claims.

2. Causation

Sarah Lampron brings two design defect claims, one for negligent design in Count I, and the other for strict liability design defect in Count V.[5] To prove negligence under New Hampshire law, a plaintiff must show the defendant owed her a duty, breached that duty, and that the breach caused the plaintiff harm. Yager v. Clauson, 169 N.H. 1, 5 (2016). To satisfy the causation requirement, the plaintiff must show "with reasonable probability, not mathematical certainty, that but for the defendant's negligence, the harm would not have occurred." Bronson v. The Hitchcock Clinic, 140 N.H. 798, 802-03 (1996);

---

[5] Under New Hampshire law, a plaintiff may bring product liability claims under different legal theories, including negligence and strict liability. Begley v. Windsor Surry Co., 2019 WL 6134350, at *3 (D.N.H. Nov. 18, 2019). The operative complaint here is a short-form complaint filed for purposes of the multi-district litigation in which the claims are merely checked, and the complaint does not provide amplifying factual allegations.

see also Trull v. Volkswagen of Am., Inc., 145 N.H. 259, 264 (2000).

"A product is defectively designed when it is manufactured in conformity with the intended design but the design itself poses unreasonable dangers to consumers." Vautour v. Body Masters Sports Indus., Inc., 147 N.H. 150, 153 (2001). To prove a defective design strict liability claim, a plaintiff must show that "(1) the design of the product created a defective condition unreasonably dangerous to the user; (2) the condition existed when the product was sold by a seller in the business of selling such products; (3) the use of the product was reasonably foreseeable by the manufacturer; and (4) the condition caused injury to the user or the user's property." Id. at 153-54. To satisfy the causation element, a plaintiff must show that the design defect in the product caused her injury. Short, 2019 WL 1430106, at *16.

Lampron relies on Dr. Margolis's opinion that she has and continues to have complications because of her mesh implant. She also relies on Dr. Ostergard's opinion about general defects in the mesh used in her procedure. She argues that the two opinions "meld together to establish a genuine issue of material fact that [she] was injured by a defect in the Defendants' mesh product." Doc. no. 70-1, at *11.

The defendants contend that those opinions, even when melded together, are insufficient to satisfy the causation element of design defect claims. In particular, the defendants point out that neither Dr. Margolis nor Dr. Ostergard provide an opinion that a specific design defect in the Prolene Soft mesh product that was used in Lampron's procedure caused her injuries.

Dr. Margolis lists complications that he believes are the result of Lampron's pelvic mesh implant but does not identify a design defect in the mesh that he believes caused those complications. Dr. Ostergard states that complications can develop from the defendants' mesh product because of erosion of the mesh, an allergic reaction, and shrinkage of the device. He further states that the defendants' mesh product is defective because, among other reasons, of the weave and weight of the mesh, impurities, not being an inert substance, potential for shrinkage, and degradation of the product. Dr. Ostergard does not identify which defects are design defects or which defects caused Lampron's injuries.

Therefore, Lampron has not provided any evidence as to what design defect in the defendants' mesh product caused her injuries. Because that is her burden of proof, she has not shown a material factual dispute that would require trial on her

design defect claims, Counts I and V.  The defendants are entitled to summary judgment on those claims.

C.  Remaining Claims

As is noted above, the Lamprons have elected not to pursue Sarah Lampron's other substantive claims in this case.  In light of previous motion practice, the result stated in Part B here, and the Lamprons' decision not to pursue other claims, the only remaining claims in this case are loss of consortium (Count XVI), punitive damages (Count XVII), and discovery rule and tolling (Count XVIII).  The defendants move for summary judgment on Count XVI and contend that Counts XVII and XVIII do not state causes of action.

1.  Loss of Consortium – Count XVI

"In a proper action, either a wife or husband is entitled to recover damages for loss of impairment of right of consortium whether caused intentionally or by negligent interference."  RSA 507:8-a.  When the spouse's claims against the defendant have been dismissed, however, the loss of consortium claim fails for lack of intentional or negligent interference with the right of consortium.  Cram v. Burger King Corp., 2019 WL 4095570, at *6 (D.N.H. Aug. 29, 2019).  Therefore, the defendants are entitled to summary judgment on the loss of consortium claim.

12

### 2. Punitive Damages – Count XVII

New Hampshire common law does not recognize punitive damages. Stewart v. Bader, 154 N.H. 75, 88 (2006). In addition, as the defendants point out, a request for damages is not a separate claim but instead is a remedy. Therefore, Count XVII does not state a claim and is dismissed.

### 3. Discovery Rule – Count XVIII

The claim that is titled "Discovery Rule and Tolling" also does not state a cognizable claim for relief. As the defendants point out, the discovery rule and tolling are theories to avoid the application of the statute of limitations, as is discussed above. Therefore, Count XVIII does not state a claim and is dismissed.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 57) is granted. Counts I, V, X, XVI, XVII, and XVIII are dismissed. The plaintiffs previously conceded the remaining claims in the case. Doc. no. 24. Therefore, all of the claims have been resolved in the defendants' favor.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

June 24, 2020

cc: Counsel of record.